Today's cases will be called as previously announced and the times will be as allotted to counsel. The first case today is number 142140, United States v. Leonel Naranjo-Rosario. May I please be your court? Good morning judges. In this case, in the middle of trial, it was known that in a search in the house where my client was, there had been a dog sweep, a dog that was taken through the house to see if there were drugs in there. Now, this was known, as I say, in the middle of trial. We had no knowledge, your honors, that this was so. The government, in fact, said that they didn't know about it. Obviously, this dog marked for drugs, allegedly, and those marks were in the room where my client was. It made three marks. Objections were made, discussions were held, hearings were held, and we asked that that not be allowed at trial. Initially, the government said that they would not use the evidence. Eventually, when they found out that the dog had been taken, they said that they would. Again, objections were made, hearings were held, and the court decided that what they would do was give us time to be able to see the evidence, hear the agent, and therefore be ready for trial. There is no way that when you break a dog together, the agent had not kept records of what happened that day, except for some rough notes. But the failure of the agent to keep records would have been just the same if you had known this before trial? Yes, your honor. The facts are the facts. Yes, your honor. And the judge did more than simply take a recess and let you examine the agent. He also let you secure your own expert, didn't he? Yes, your honor. However... What more could you have done if you had known before trial? Before trial? Please, guilty, not go to a trial. Obviously, if my client had known that there had been a dog sweep positive in his room, the facts were completely different, the scenario was different, and then there was evidence that he could have been involved with drugs. Prior to that... Excuse me, counsel. Yes, your honor. Did you, at the time you discovered that the agent existed, that the dog existed, and learned what the testimony would be, was there any motion made in the district court to change the defendant's plea to attempt to reinstate the government's pre-trial pre-offer? No. Anything of that sort? No. Well, how can you ask us? A mistrial was asked for. Yeah, but so how can you ask us to send this back so that you can, so that the defendant can plead guilty when the district court wasn't asked for that relief? Because, judges, I think that what we have to ask is how this changed our case, the defense. At that time, everything turned onwards. I mean... Well, is that fair? I mean, I've read portions of the record. It seems to me, with all due respect, that the evidence against your client was very strong. Indeed, you haven't even preserved a challenge to the sufficiency of the evidence on the drug trafficking counts. Correct. Yeah. I mean, the government, I'm not condoning what the government did in this case. They should have known of this dog handler, and they should have disclosed him, right? What I'm searching for is whether there is reversible error here. And one thing that I'm struck with is that the government's case, apart from the dog handler, seems to me very strong. If I may, Judge, as to the dog, the court did state that it would not come in, that the evidence would not come in. The government then claimed a prejudice. So do we, Your Honor. We did not have an even playing field at that time. Right. I understand your argument, but I'm asking you to assume that there was error here. Okay. That the court committed error in allowing the testimony of the drug handler, because it hadn't been timely announced, for whatever reason, that there was error. Was that error anything other than harmless in view of the overwhelming nature of the government's case? A mistrial was asked at that time. I know a mistrial was asked, but that has nothing to do with how strong the government's case was. Let me go to that point, Your Honor, if I may. In this case, Your Honor, it was determined by the court that my client was a manager in this case. Okay. And the court determined that the gun and the money were part of this deal. However, testimony on record shows it was not that way. Why? None of the agents, Your Honor, ever talked about weapons being used, talked about, or that they did need security or anything. Neither did the owner of the drugs, Vivier Gonzalez. No one ever mentioned weapons at all, Your Honor, until that search came out. In fact, as to that gun, from day one, before a trial, I had asked the government, what evidence do you have that this gun has something to do with the drugs in this case? The government said in a motion that the evidence would show that during the first part of this case, they had recorded the agents and others talking about the need for weapons. That is not true, Your Honor. There is not one single recording that shows that. But there was evidence that during the search, the door to the bedroom was closed. It took him a while to come out of the bedroom. They found a paint can in the closet that had a lot of money in it. On top of the money was the gun. This is the closet in the room that he had been staying in for eight or nine days or less. In my bank, George. So my question is, how much more does the dog alerting add to that? Your Honor, it took him seconds to open the door. That was, that was agent, I can't remember his last name, Agent Jimenez, testifying that a penitent came out of the room in seconds. He's the only one that came out of the room? Yes, Your Honor. So he was in the room with the door closed? He was in the room with the door closed. And there was a bucket. And in that bucket, there was money. And there was a gun. Both things were inside a closed bucket. Now, before that, Your Honor, before that, a penitent had only been seen once by anyone else, the agents or anyone else, when there was a car exchange. But what was the, was there conflicting testimony about how long he'd been staying in that room? Yes, Your Honor. Okay, so on one side, it's eight or nine nights. What was the defense side? The agents, well, one of them said it was seconds, that it took him seconds to open the door. How long he'd been staying there? About the days he had been there, seven days, eight days, nine days, a week. So there really wasn't any conflicting testimony about that? Yes. The court found, Your Honor, that my client was the owner of that gun, the owner of that money. But let me tell the court, the agents never paid money for drugs. If I may finish, the owner, the owner testified that there was never any money exchanged. How can you tie that money to those drugs? Thank you. Thank you, Judge. Good morning. May it please the court, Maenan A. Schwartz for the United States. You just heard from defense counsel that they didn't have any knowledge of the dog there. But the United States would like to point out that Paredes, in his testimony, indicated that he had seen the dog. Yeah, but Paredes is not this defendant. Correct. And there's no way we can impute his knowledge to this defendant. The government, on the other hand, had knowledge of the dog. The prosecutors did not. The prosecutors may not, but the investigating officers certainly did. Correct, Your Honor. All right. Absolutely, the government should know. And let's start with what's absolutely unarguable, that there's a violation of the discovery rules here by the government because the dog handler's existence and perspective testimony was never disclosed pre-trial as the rule requires. Yes, Your Honor. Okay. So we start with the premise that there's error here. Why doesn't that error require some relief for the defendant? It did require some relief, and the district court gave them significant relief. He gave them a continuance. He called the dog handler in to testify outside the presence of the jury and allowed them to cross-examine him. So they had advance knowledge of what his testimony would be and an opportunity to cross him outside the presence of the jury before he actually testified. And does the government say that that procedure cured the error? In addition, Your Honor, he also allowed them to hire their own expert to reflect. Okay. And does that cure the error? Yes, Your Honor. It seems to me if that cures the error, then the government never has any incentive to comply with the rule because we can always play catch-up at trial. Your Honor, a case where there was bad faith, where the government purposely didn't disclose, would be a different case. Well, but then we don't know what the government purposely or accidentally failed to disclose. All that we know is that this evidence should have been disclosed and that investigators working for the government knew of it. Your Honor, we do have a finding by the district court that there was no bad faith. He says that on the record. And do you have any case law at all that says that a procedure such as the district court invoked cures the error? Your Honor, those are the prophylactic measures that Rule 16 provides. That's not what I asked you. Do you have any case law that says if those prophylactic measures are carried out, that that cures the error, cures the failure to disclose? I do not have a case that's directly on the line, Your Honor. All right. So now tell me, if I persist in my belief that this was an error, why isn't the defendant entitled to a new trial? Again, because the government maintains its position that the steps that the district court took... Yeah, but by the time the district court invoked those steps, the defendant's trial strategy was already baked in. It already had cross-examined other witnesses. It had made other trial decisions. Yes, Your Honor. To a large extent, the testimony of the dog handler was of a piece with the other evidence that the government had already presented. It may have been of a piece, but it wasn't cumulative. No one else testified that the dog alerted in three places or testified as to what those alerts meant. Correct, Your Honor. And that was expert testimony, was it not? No, Your Honor. That was lay witness testimony. And what case authority do you have for that? There's a case that we cite in our brief, Your Honor. The name escapes me at the moment. Well, that's too bad that it escapes you, but tell me why that's not expert testimony. The dog handler testifies by reason of special training and experience, does he not? Your Honor, this court has... Would you answer my question? The dog handler testifies by reason of special training and experience. Your Honor, he may. This court... He may? Yes, this court... In other words, someone who is not trained as a dog handler can come into court and testify as to the meaning of these dog alerts? Someone could testify that the dog scratched in three areas, but... But could not testify what those scratches signified. Your Honor, in answer to your question, this court has held that the testimony of a dog handler, that there's not a bright line between lay witness and expert testimony. That's true. And in this case, the facts that the dog handler testified to were his observations, his personal observations and his experience. He wasn't giving the kind of opinion testimony that Rule 701 is designed to cover. The dog alert means, the dog scratching in this place means that the dog has picked up traces of cocaine. That's not the type of opinion to which Rule 701 is addressed? I don't mean to be difficult, I just don't understand your reasoning. If you review the dog handler's testimony, he's asked, you know, can the dog alert to other things? Does it alert to money? And he says, yes. I don't know what the quantum is that is required for the residue for him to alert to. He doesn't know those sorts of things. He's not... But it seems to me that what you're saying is the expert may not have been a good expert. Ms. Schwartz, is the issue of whether the dog handler testified as a lay person or is an expert relevant to our... necessarily relevant to our analysis of whether the defendant was entitled to a new trial, I guess, a mistrial, as he asked for at that point? It's not necessarily relevant, but the protections for expert witness testimony and disclosure are, of course, more than for a lay witness. And so to the extent that he testified as a lay witness to facts that he personally observed, and remember, he was the one who actually opened the bucket. And so, for instance, he had testimony about what he actually found when he opened that. But if the court were to find that the dog handler giving that kind of testimony must be expert testimony and therefore follow the proper procedures for identifying expert testimony, what's the government's argument? The government's position would still be that the steps that the district court took to make sure that there was no undue prejudice to the defendant would have been sufficient to cure. Even if it was expert testimony required? Correct, Your Honor. In this very unusual circumstance where there was a dog marking that the prosecutors weren't aware of, and so this is a limited scenario, and where the district court expressly found that there was no bad faith on behalf of the prosecutors. They didn't make a finding that there's no bad faith on behalf of the investigators, though, right? Uh, correct, but I fail to see what the motive would have been there. Since there was a positive alert, I don't think the investigators had anything to gain from not disclosing that. You know, this was a case where the bulk of the resources had been directed to trailing the car and the people that the undercover agent had been talking with. So I think there was just a breakdown of communication when the actual search warrant was executed. Counsel, you don't have much time left. Counsel for the appellant mentioned briefly the sentencing enhancement for managerial role. What evidence in the record supports that enhancement? Your Honor, there was significant evidence of the conversations. There were recordings and conversations between Gonzalez and a couple of the other co-conspirators with the undercover agent where they referenced, although not by name, the other people that were working with them on this deal. They talked about someone who was from the Dominican Republic. They talked about the practice of the supplier to use a, they call it veador, which is translated in the transcripts as a watcher, someone who comes in to analyze and watch that everything is on the dot, which we would argue is the role of a supervisor. But what testimony was there? Because since they didn't name any names and the district court made no finding that that conversation referred to the appellant, how can we make that connection? The district court did make the finding that Naranjo had been the one organizing the delivery. I know, but he didn't make a finding that he was the unnamed person referred to in any particular conversation. Correct, Your Honor, but the evidence nonetheless supports that there was a person and he's the only person who fits that role. And the evidence at trial was that he actually fulfilled that role by, for instance, sitting with Gonzalez in the car while the drugs were loaded. And because he had the money, the drug-scented money, the money that is approximately $119,000. When you say the drug-scented money, we're back to our other problem. The only evidence that the money was drug-scented was the dog's alert, isn't that right? Your Honor, even if it wasn't drug-scented, it was still an amount of money that was consistent with the government's theory of the transaction. I thought the money didn't change hands. Am I mistaken about that? I thought the evidence was that the money did not go with the defendants. I apologize, Your Honor, when I see I'm out of time, but I'd like to respond to your question. When you say the defendants, do you mean the money wasn't with Naranjo? I don't know who it was with. I thought it stayed with the... So possibly the confusion here is that there's money for the transport of the drugs from the Dominican Republic, and then there's the money that they would have been going to receive from the undercover agent when they made the transfer that did not take place. Okay, so this money coincides with the first tranche, and it's the right amount, roughly? Yes, Your Honor. So minus $50, it's $119,000, which is evenly divisible by 70, which is the 45 that was actually captured in the back of the Pathfinder, and the 25 that Gonzalez said my collaborators kept that, the implication being they were selling that to someone else. So 25 plus 45 is 70. That's $1,700 per brick, makes the $119,000. Thank you. Thank you.